Jason **RAMJATTANSINGH**, Appellant

v.

The **STATE** of Texas, Appellee

**NO. 01-15-01089-CR**

Court of Appeals of Texas,
Houston (1st Dist.).

Opinion issued August 10, 2017

Discretionary Review Granted
November 15, 2017

Brian W. Wice, 440 Louisiana, Suite 900, Houston, TX 77002-1635, for Appellant.

Kim Ogg, District Attorney, Kimberly Aperauch Stelter, Assistant District Attorney, Harris County, Texas, 1201 Franklin, Suite 600, Houston, TX 77002, for Appellee.

Panel consists of Justices Higley, Bland, and Brown.

## OPINION

Harvey Brown, Justice

A jury found Jason Ramjattansingh guilty of driving while intoxicated with an alcohol concentration of at least .15 at the time of analysis and at or near the time of the offense. He appeals on several grounds, including insufficiency of the evidence. He contends that the evidence is insufficient because the State's expert testimony did not show that his alcohol concentration was at least .15 at or near the time of the offense. We reverse Ramjattansingh's Class A misdemeanor conviction, render a judgment of acquittal on that charge, and remand for a new trial on the lesser-included Class B misdemeanor offense of driving while intoxicated.

### Background

Around 9:30 one evening, tow-truck driver Joshua Wilson dialed emergency assistance to report a "drunk driver." Wilson told the dispatcher that he was following a driver who was "all over the road" and had almost caused several accidents. Wilson and the driver he was following, Jason Ramjattansingh, eventually pulled off the road into a public parking lot.

S. Delacruz, a peace officer with the Houston Police Department, arrived at the

lot shortly afterward at around 9:45. Delacruz briefly spoke to Wilson, who told the officer that Ramjattansingh had been driving erratically and almost hit other vehicles. In the lot, Ramjattansingh was "swaying," "couldn't stand straight," and seemed intoxicated. Delacruz handcuffed him and placed him in the back of his cruiser to await the arrival of another officer who was en route to investigate whether Ramjattansingh had driven while intoxicated.

Officer A. Beaudion arrived around 10:05 to conduct the investigation. Ramjattansingh admitted to her that he had been drinking "shots" since about 5:00 p.m. He had difficulty answering Beaudion's questions and his speech seemed slurred. He had a strong odor of alcohol on his breath and could not maintain his balance. Beaudion administered three field sobriety tests—the horizontal nystagmus test, one-leg stand test, and walk-and-turn test. Ramjattansingh could not complete the first one because he was unable to hold his head still. He showed additional signs of intoxication during the other two. After these tests, Beaudion placed Ramjattansingh under arrest and took him to the HPD intoxication center.

About an hour and a half later, at 11:30, Ramjattansingh was administered a breath test at the intoxication center using an Intoxilyzer 5000. The test yielded two results, which showed alcohol concentrations of .235 and .220 per 210 liters of breath.

The State subsequently charged Ramjattansingh with the offense of driving while intoxicated. *See* TEX. PENAL CODE § 49.04. It additionally alleged that his breath showed an alcohol concentration of at least .15 "at the time of the analysis and at or near the time of the commission of the offense," which elevates the offense from a Class B to a Class A misdemeanor. *See id.* § 49.04(b), (d).

Officers Delacruz and Beaudion testified at trial, as did the HPD employee who administered Ramjattansingh's breath test. In addition, C. Bishop, a technical supervisor for the Texas Department of Public Safety Breath Alcohol Testing Program, testified as an expert. Among other things, she opined that an average person would have to drink about 11 shots to produce a result of .220 on a breath test and that someone with this alcohol concentration would have lost the normal use of his physical or mental faculties.

However, Bishop conceded that she could not say what Ramjattansingh's alcohol concentration was when he was driving and that any attempt to do so would be speculative. She testified that retrograde extrapolation—extrapolating backward in time from breath test results to estimate an alcohol concentration at an earlier point—is possible. But she said that certain facts must be known to make such an extrapolation, including not only the time of the traffic stop, the time of the breath test, and its results, but also the time of the driver's last meal, what he ate, and the time of his last alcoholic drink. If any of these facts are unknown, retrograde extrapolation is not possible. Bishop acknowledged that she did not know the facts necessary to make a retrograde extrapolation in this case.

Bishop further conceded that, given the limited facts available and the manner in which the body processes alcohol, it was possible that Ramjattansingh's alcohol concentration was below the legal limit of .08 when he was driving. For example, if he drank several alcoholic beverages in rapid succession before getting behind the wheel, his alcohol concentration could have been below the legal limit while driving but subsequently tested higher because in such a scenario his alcohol concentration would have increased over time.

The jury was instructed on both the Class A and lesser-included Class B misdemeanor offenses of driving while intoxicated. *See* TEX. PENAL CODE § 49.04. It found that Ramjattansingh had an alcohol concentration of at least .15 at the time of the breath test and at or near the time he was driving and therefore found him guilty of the former offense.

### Driving While Intoxicated with an Alcohol Concentration of at Least .15

■ A driver commits the Class B misdemeanor offense of driving while intoxicated if he operates a motor vehicle in a public place. TEX. PENAL CODE § 49.04(a)–(b). He is intoxicated if alcohol, drugs, and/or another substance have deprived him of the normal use of his mental or physical faculties or if he has an alcohol concentration of .08 or more. *Id.* § 49.01(2). If the proof shows that he had an alcohol concentration of .15 or more at the time the analysis was performed, however, the offense is elevated to a Class A misdemeanor. *Id.* § 49.04(d).

While the Penal Code merely requires a defendant to have an alcohol concentration of .15 at the time of analysis to elevate the offense to a Class A misdemeanor, the State's information alleged that Ramjattansingh had an alcohol concentration of .15 or more both at the time of the analysis and at or near the time of the offense. The charge likewise required the jury to find that he had this alcohol concentration at the time of analysis and at or near the time of the offense to find him guilty of the Class A misdemeanor of driving while intoxicated.

In *Meza v. State*, this court addressed the legal sufficiency of the proof in a situation in which the jury charge included this additional requirement that the defendant's alcohol concentration be at least .15 at or near the time of the offense. 497 S.W.3d 574, 581–82 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Because the State's expert conceded that she could only speculate about the defendant's alcohol concentration at the time of the offense based on a subsequent breath test, this court reversed the defendant's conviction for the Class A misdemeanor offense of driving while intoxicated. *Id.* at 582–84, 586.

Like the State's expert in *Meza*, technical supervisor Bishop said that she could not say what Ramjattansingh's alcohol concentration was when he was behind the wheel and that any attempt to do so would be speculative. She conceded that she could not extrapolate backwards in time based on his breath test because she did not know when he ate his last meal and what he ate, when he had his last alcoholic beverage, or exactly when he stopped driving when confronted by the tow-truck driver. She further conceded that it was possible that Ramjattansingh's alcohol concentration could have been below .08 when he was driving depending on these unknown circumstances.

■ The State concedes its expert testimony is similar to the testimony that *Meza* held insufficient but responds that *Meza* is distinguishable because that decision assessed the sufficiency of the evidence under the actual charge given to the jury rather than a hypothetically correct jury charge. Appellate courts ordinarily must measure evidentiary sufficiency under a hypothetically correct jury charge, which is one that accurately states the law, is authorized by the charging instrument, does not unnecessarily increase the State's burden of proof or restrict its theories of liability, and adequately describes the crime for which the defendant was tried. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The State did not dis-

pute the standard of review in *Meza* but does dispute it in this case. Under a hypothetically correct charge, the State argues, it needed to prove only that Ramjattansingh had an alcohol concentration of .15 or more at the time of analysis, not at or near the time of the offense. It is undisputed that his alcohol concentration was greater than .15 at the time of the breath test.

■ We agree that evidentiary sufficiency ordinarily must be measured under a hypothetically correct jury charge rather than the charge given. "*Malik* flatly rejected use of the jury charge actually given as a means of measuring sufficiency of the evidence." *Gollihar v. State*, 46 S.W.3d 243, 252 (Tex. Crim. App. 2001). But in this case, the State invited error. It alleged in its information charging Ramjattansingh with driving while intoxicated that his alcohol concentration was .15 or more both at the time of the breath test and "at or near the time of the commission of the offense," and the jury found him guilty as charged in the information. In its brief, the State acknowledges that it increased its burden of proof by adding the language as to Ramjattansingh's alcohol concentration at or near the time of the offense. The State's deliberate decision to increase its burden at trial forecloses it from insisting on appeal that the sufficiency of the evidence must be measured under a hypothetically correct jury charge with a lesser burden.

■ The doctrine of invited error estops a party from asking for something, getting what it asked for, and then complaining about the outcome. *Ex parte Roemer*, 215 S.W.3d 887, 890 (Tex. Crim. App. 2007); *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999). The doctrine applies when the complaining party was the "moving factor" in creating the purported error it complains about. *Ex parte Guerrero*, 521 S.W.2d 613, 614 (Tex. Crim. App. 1975);

*Franks v. State*, 961 S.W.2d 253, 255 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). In this instance, the higher burden about which the State complains would not have been included in the jury charge had the State not charged Ramjattansingh with having an alcohol concentration of .15 or more when he was behind the wheel. We therefore reject the State's argument for review under a hypothetically correct jury charge because it is an impermissible attempt to disown the higher burden of proof that appeared in the actual charge only as a result of the State's charging decision.

While *Malik* rejected a prior line of decisions in which evidentiary sufficiency was measured under the charge given, *Malik* concerned jury charges that imposed a burden on the State "beyond that which was legally required *and beyond the allegations in the indictment.*" *Gollihar*, 46 S.W.3d at 251 (emphasis added). In the cases that *Malik* rejected, the State had been held to additional burdens imposed in the jury charges because it was viewed as having acquiesced in the additional burdens by failing to object to them. *Id.* In contrast, in this case, the State did not merely acquiesce in an additional burden by failing to object to the jury charge; rather, the State affirmatively created the additional burden by the way in which it chose to charge Ramjattansingh in the information. *See Meza*, 497 S.W.3d at 580, 586 (measuring evidentiary sufficiency under actual charge given to jury where information and charge requested by State imposed additional burden of proof); *cf. Leonard v. State*, No. 14-15-00560-CR, 2016 WL 5342776, at *2–3, *5–6 (Tex. App.—Houston [14th Dist.] Sept. 22, 2016, pet. ref'd) (mem. op., not designated for publication) (assessing evidentiary sufficiency as to DWI under hypothetically correct jury charge instead of actual charge

given that included "at or near the time of the commission of the offense" language; State's information included same language, but State had attempted to omit this language from jury charge and acquiesced in its inclusion in the charge only after defendant objected that jury charge should include same language as information).

■ The State next contends that the evidence was sufficient under the charge given to the jury because the evidence proved beyond a reasonable doubt that Ramjattansingh had an alcohol concentration of at least .15 near the time of the offense. Like the expert in *Meza*, however, Bishop unequivocally testified that Ramjattansingh's alcohol concentration at or near the time of the offense could not be extrapolated from the measurements the State later obtained by administering a breath test. The State argues that the manner in which it tried this case distinguishes it from *Meza*. In particular, the State argues that it focused on proving only that Ramjattansingh's alcohol concentration was .15 or more *near* the time of the offense, rather than *at* the time of the offense. But the State did not introduce such proof either with respect to when Ramjattansingh was driving or any time near this activity. Instead, the lone evidence that Ramjattansingh had an alcohol concentration of .15 or more at any time was the results of his breath test, which was administered about two hours after he was last behind the wheel.

■ *Near* does not appear in Section 49.04 of the Penal Code, and it was not defined in the charge. The State maintains that the term should be accorded its common meaning, and we agree. Undefined terms should be given their ordinary meaning; jurors may read them in the manner in which they are commonly used, and we must review the sufficiency of the evidence in light of their common usage. *See Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992); *Gilbert v. State*, 429 S.W.3d 19, 22 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). When, as here, *near* is used as a preposition, it ordinarily signifies "a relatively short distance in space, time, degree." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 976 (5th ed. 2014). The State concedes that the interval between the offense and Ramjattansingh's breath test was around two hours. Given the impact that the passage of time has on a defendant's alcohol concentration, a two-hour interval is not close enough in time to an alleged instance of drunk driving to qualify as *near* the time of the offense, at least not on this record. The State's expert testified that a person's alcohol concentration can rise rapidly if he drinks a large amount of alcohol in a short amount of time, and it was undisputed that the circumstances of Ramjattansingh's alcohol consumption and other critical variables that would affect his alcohol concentration were unknown. Bishop even conceded that Ramjattansingh's alcohol concentration could have been below the legal limit of .08 when he was on the road. When viewed in the light most favorable to the verdict, this uncertain evidence was not sufficient to enable a rational factfinder to find beyond a reasonable doubt that Ramjattansingh's alcohol concentration was .15 or more near the time of the offense. *See Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (legal sufficiency standard).

Accordingly, we sustain Ramjattansingh's evidentiary insufficiency issue, reverse his conviction for the Class A misdemeanor offense of driving while intoxicated, and render a judgment of acquittal on that charge. *See Meza*, 497 S.W.3d at 586. We remand this case for a new trial on the lesser-included Class

B misdemeanor offense of driving while intoxicated. *See id.* at 586–87.

### Ramjattansingh's Other Appellate Issues

Because we reverse Ramjattansingh's conviction for insufficient evidence and he does not seek greater relief than we afford him on any other basis, we do not address the additional points of error he raises on appeal. *See* TEX. R. APP. P. 47.1.

### Conclusion

We reverse Ramjattansingh's conviction for the Class A misdemeanor of driving while intoxicated, render a judgment of acquittal with respect to that offense, and remand for a new trial on the lesser-included Class B misdemeanor offense.